UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN CORTNER,<br><br>Defendant. | Case No. 5:24-cv-02616-KK-SP<br><br>**[PROPOSED] ORDER GRANTING THE UNITED STATES' MOTION TO DISMISS THE UNITED STATES' COMPLAINT AND INCORPORATE SETTLEMENT AGREEMENT INTO THE COURT'S ORDER** |

Pursuant to the United States' Motion to Dismiss the United States' Complaint And Incorporate Settlement Agreement Into the Court's Order (ECF No. 13) ("Motion") filed by the United States in this action on April 8, 2025, IT IS HEREBY ORDERED AND ADJUDGED THAT, pursuant to the terms of the Settlement Agreement ("Agreement") reached by the Parties, the United States' Complaint (ECF No. 1) is dismissed with prejudice and the Agreement attached to the Motion as Exhibit 1 is incorporated into and made part of this Order.

Dated: 04/09/2025

_____
Honorable Kenly Kiya Kato
United States District Judge

1

# EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into by the United States of America ("United States"), by authority of the Attorney General of the United States on behalf of the Department of the Interior, Bureau of Indian Affairs ("BIA"), and acting on its own behalf as trustee for the Colorado River Indian Tribes ("CRIT"), a federally recognized Indian Tribe, and Steven Cortner ("Mr. Cortner") (collectively, "the Parties") with respect to all matters and claims arising out of the litigation the United States District Court for the Central District of California, captioned *United States v. Cortner*, Case No. 5:24-cv-02616-KK-SP.

## RECITAL OF MATERIAL REPRESENTATIONS

A. CRIT is a federally recognized Indian tribe residing on the Colorado River Indian Reservation ("Reservation"), which Congress established in 1865. The Reservation straddles the Colorado River as it forms the state borders between Arizona and California. Originally, the Reservation was located entirely to the east, or Arizona side, of the Colorado River. The Reservation was expanded through executive orders dated November 22, 1873; November 16, 1874; May 15, 1876, and November 22, 1915.

B. In 1964, Congress passed legislation "for the purpose of fixing the beneficial ownership of real property interests" in the Reservation, providing that the "unallotted lands of the [Reservation] . . . are hereby declared to be tribal property held in trust by the United States for the use and benefit of [CRIT]." Pub. L. 88-302, 78 Stat. 188, 189 (Apr. 30, 1964) ("1964 Act"). In addition, the 1964 Act authorized the Secretary of the Interior ("Secretary") to approve leases (also called "permits") for lands on the Reservation, but the 1964 Act initially held in abeyance the Secretary's leasing authority on "lands lying west of the present course of the Colorado River and south of section 25 of township 2 south, range 23 east, San Bernardino base and meridian in California." *Id.* § 5. The 1964 Act further provided, however, "any of the described lands in California shall be subject to the provisions of [the 1964 Act] when and if determined to be within the [R]eservation." *Id.*

C. On January 17, 1969, the Interior Solicitor, Edward Weinberg, issued a legal opinion in which he determined that the western boundary of the Reservation included a portion of Riverside County, California. Solicitor's Opinion, "Western Boundary of the Colorado River Indian Reservation," Edward Weinberg, U.S. Dep't of the Interior, Opinion Letter on Western Boundary of the Colorado River Indian Reservation (Jan. 17, 1969), as reprinted in Opinions of the Solicitor of the Department of the Interior Relating to Indian Affairs 1917-1974 at Vol. II 2096, https://thorpe.law.ou.edu/sol_opinions/p2076-2100.htm. That same year, the Secretary, Stewart Udall, concurred in the opinion and instructed the Director of the Bureau of Land Management to suspend certain surveys and reinstate others so as to fix the line of the western boundary of the Reservation. ECF No. 1 at 4 ¶ 10. In 1970, the subsequent Secretary, Walter Hickel, confirmed Secretary Udall's determination was a "final, official and unqualified declaration" on the proper location of the western boundary of the Reservation. *Id.* at 5 ¶ 11.

D. The BIA then published a notice in the Federal Register that extended the Colorado River Reservation Indian leasing program to "those lands which the Secretary of the Interior has determined, pursuant to the Act of April 30, 1964 (78 Stat. 188), to be within the [R]eservation."

*Settlement Agreement Page 1 of 6*

Exhibit 1
Page 1 of 6

*Certain California Lands Determined to Be Within the Colorado River Reservation*, 35 Fed. Reg. 18,051 (Nov. 25, 1970). The BIA explained that such lands are those "lying west of the present course of the Colorado River and south of sec. 25 of T. 2 S., R. 23 E., to the south line of sec. 12 of T. 5 S., R. 23 E., San Bernardino base and meridian in California." *Id.* After this November 25, 1970 Federal Register notice, the Secretary, through the BIA, began approving permits issued by CRIT to occupy Reservation lands within the area determined to be within the Reservation by the Secretary in 1969.

E. On August 27, 1980, BIA approved Permit No. 301(R) that CRIT issued to Edwin and Helen Ebel for single family residential occupancy of Lot 69 of the Shaggy Tree Subdivision, consisting of approximately 0.17 acres with 50 feet of river frontage situated within Section 25, Township 3 South, Range 23 East, of the San Bernardino Base and Meridian ("Subject Property") ECF No. 1 at 6 ¶ 18. Subject Property is within the exterior boundaries of lands determined to be within the Reservation as noticed in the Federal Register on November 25, 1970. On August 9, 1996, the BIA terminated the Permit for failure to pay rent. *Id* at 8 ¶ 31. In July 2010, Mr. Cortner contacted CRIT about entering into a lease for the Subject Property but ultimately declined to do so. *Id.* at ¶ 33-35.

F. On December 10, 2024, the United States filed a complaint against Mr. Steve Cortner believing that he possesses or claims some right, title or interest in the Subject Property. The complaint sought declaratory and monetary relief, as well as an order for ejectment.

G. Mr. Cortner has advised the Plaintiff that he claims no possession, right, title or interest in the Subject Property.

H. Mr. Cortner alleges that he has not used or occupied the Subject Property, other than as a short-term guest, in the last six years and 90 days and claims no ownership interest in the Subject Property.

I. Through this Agreement, the Parties wish to resolve and clarify the issue at hand.

NOW, THEREFORE, in consideration of the covenants, agreements, mutual promises, and representation hereinafter set forth, the Parties agree as follows:

### TERMS AND CONDITIONS

**1.   The Subject Property's Trust Status.**

The Parties acknowledge and agree that the Subject Property is within the Reservation and on land held in trust by the United States for the benefit of CRIT. Mr. Cortner has never made any claim to such property and has no claim to such property.

**2. Conveyance of the Permanent Fixtures and Personal Property to CRIT.**

A. Mr. Cortner hereby disclaims that he has ever had any ownership of and title to any real and personal property on the Subject Property (including but not limited to the residential structure on the Subject Property).

    **B.** Mr. Cortner will not interfere in any way with the United States' or CRIT's ability to access the Subject Property after the filing of this Agreement.

**2. Release of Claims.**

    **A.** The United States agrees to move to dismiss, with prejudice, it's suit against Mr. Cortner, *United States v. Cortner*, Case No. 5:24-cv-02616-KK-SP. This Agreement is a compromise settlement and shall not be construed as an admission of liability by any of the Parties.

**3. Attorneys' Fees and Costs.**

    The Parties shall each be responsible for their own attorneys' fees, costs, and other litigation expenses in connection with *United States v. Cortner*, Case No. 5:24-cv-02616-KK-SP.

**4. Entry of Agreement.**

    Not later than five (5) days after the Parties have executed this Agreement, the Plaintiff shall file this Agreement as part of a proposed Order to be entered in the United States District Court for the Central District of California in *United States v. Cortner*, Case No. 5:24-cv-02616-KK-SP.

**5. Authority of the Parties.**

    The undersigned representative(s) for each Party certifies that they are fully authorized by the Party whom they represent to enter into the terms and conditions of this Agreement and to bind legally such Party to it.

**6. Full Cooperation in Consummating Agreement.**

    The Parties shall cooperate fully in the execution of any and all other documents and the completion of any additional actions that may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement.

**7. Construction of Agreement.**

    For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all of the Parties and shall not be construed against any of them in any dispute for that reason.

**8. Modification.**

    The Agreement shall only be amended in writing duly executed by authorized representatives of the Parties.

**9. Parties Bound**

    This Agreement shall be binding upon the United States and Mr. Cortner.

10. **Third-Party Beneficiaries.**

CRIT, including its respective officers, agents, employees, and contractors, is the only intended third-party beneficiary of this Agreement. Except for CRIT, nothing contained in this Agreement shall entitle any other person or entity other than the Parties or their officers, agents, employees, contractors, heirs, successors or assigns to any claim, cause of action, remedy, right, benefit, or immunity of any kind whatsoever.

11. **Execution in Counterparts.**

This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

12. **Notice.**

A. The Parties shall at all times keep one another informed of the names, addresses and contact information of their respective principal representatives for purposes of this Agreement.

B. All Notices or other communications required or permitted by this Agreement, except as otherwise provided by this Agreement, shall be in writing and personally delivered, by reputable overnight courier, or sent by registered or certified mail, return receipt requested, and postage prepaid, addressed to the Parties at the addresses set forth below (or any other address that the Party to be notified may have designated to the sender by like notice), by facsimile to the numbers set forth below, or by electronic mail to the e-mail addresses set forth below. Notices personally delivered shall be deemed given the day so delivered. Notices given by overnight courier shall be deemed given on the first business day following the mailing date. Notices mailed as provided herein shall be deemed given on the third business day following the mailing date. Notices sent by facsimile or e-mail shall be deemed delivered on the date the facsimile or e-mail is received. Notice of change of address shall be given by written notice in the manner detailed in this paragraph.

| If to the United States, to: | With a copy to: |
|---|---|
| Kelby Welsh, Trial Attorney<br>Marisa Hazell, Trial Attorney<br>Tribal Resources Section<br>Environment and Natural Res. Div.<br>U.S. Department of Justice<br>P.O. Box 7611<br>Ben Franklin Station<br>Washington, D.C. 20044-7611 | Karen F. Boyd, Attorney-Adviser<br>Indian Trust Litigation Office<br>Office of the Solicitor<br>U.S. Department of the Interior<br>1849 C Street NW, Room 5557<br>Washington, D.C. 20240 |

| If to Mr. Cortner: | With a copy to: |
|---|---|
| Steven Cortner<br>12890 Fremont Street #91881<br>Yucaipa, CA 92399-4945 | Mark Harrison<br>2801 T Street<br>Sacramento, CA 95816 |

| If to the Colorado River Indian Tribes, to: | With a copy to |
|---|---|
| Chairwoman Amelia Flores<br>Executive Offices<br>Colorado River Indian Tribes<br>26600 Mohave Rd.<br>Parker, AZ 85344 | Rebecca Loudbear<br>Office of the Attorney General<br>Colorado River Indian Tribes<br>26600 Mohave Rd.<br>Parker, AZ 85344 |

### 13. Entire Agreement Clause.

The Parties further intend that this Agreement shall constitute the complete and exclusive statement of its terms and that no extrinsic evidence whatsoever (including, without limitation, prior drafts or changes therefrom) may be introduced in any judicial, administrative or other legal proceeding involving this Agreement.

### 14. Severability.

The invalidity of any portion of this Agreement shall not invalidate the remainder. If any term, provision, covenant, or condition of this Agreement is held to be invalid, void, or unenforceable by a court of competent jurisdiction, the Parties shall amend this Agreement and/or take other action necessary to achieve the intent and purpose of this Agreement in a manner consistent with the ruling of the court.

### 15. Additional Documents.

The Parties agree that they will execute any additional documents required to be signed to effectuate any of the terms and conditions of this Agreement in a timely manner.

The Parties have duly executed this Agreement as of the respective dates written below.

DATED: 4/4/2025

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General

*/s/ Kelby Welsh*

**KELBY WELSH**
**MARISA HAZELL**
United States Department of Justice
Environment & Natural Resources Division
Tribal Resources Section
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611
TEL: (202) 341-3380 (Welsh)
FAX: (202) 353-1156

DATED: 04-05-2025

STEVEN CORTNER

*/s/ Steven Cortner*

**STEVEN CORTNER**